UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

JAMES A. GREEN, JR.,

    Petitioner,

v.                                              Case No. 1:22cv207-AW-HTC

RICKY DIXON,

    Respondent.
_____/

REPORT AND RECOMMENDATION

    Petitioner James A. Green filed a petition under 28 U.S.C. § 2254, raising three grounds of ineffective assistance of counsel during his conviction for trafficking in cocaine in the circuit court of Alachua County, Florida, in case no. 2016 CF 2598. Doc. 1. After considering the petition, the record, the Secretary's response, Doc. 14, and Green's reply, Doc. 24, the undersigned recommends the petition be DENIED without an evidentiary hearing.

I.     **BACKGROUND**

    A.     **Offense and Conviction**

    On July 27, 2016, Green was in a vehicle stopped for a traffic offense on State Road 93, in Alachua County, at approximately the 376-mile marker. Doc. 14-1 at

28, 96 & 225.[1] According to the arrest report, Green, who was seated in the passenger seat behind the driver, was observed making furtive movements inside of the vehicle. After a K9 alerted to the presence of narcotics in the vehicle, over 28 grams of cocaine was located in the area where Mr. Green was making his furtive movements, and later during the investigation he admitted ownership of that cocaine. *Id.*

He was charged with trafficking in cocaine. Doc. 14-6 at 73. His first counsel, Gregory R. Mason, filed a motion to suppress arguing the stop was pretextual and the result of racial profiling; the length of the stop was excessive during which he was not free to leave; and the warrantless search was without probable cause. Doc. 14-1 at 96-99. After filing the motion, Mason (who was retained counsel) filed a motion to withdraw after Green complained counsel was afraid of the judge. Doc. 14-1 at 105. That motion was granted, and the circuit court appointed the public defender to represent Green. Doc. 14-1 at 106. On May 26, 2023, Green's second counsel, Assistant Public Defender Linda E. Hadad, also moved to withdraw, Doc. 14-1 at 124, which the court granted and appointed new counsel to represented Green, Doc. 141-1 at 125. Green's third counsel was Assistant Regional Counsel, Eric Atria. Doc. 14-1 at 126. On November 30, 2017, another retained counsel,

---

[1] Because Green ultimately pled guilty, the Court relies on the arrest report, motion to suppress and statement of facts supporting the plea for this factual history.

Dustin Tischler, was substituted for Atria. Doc. 14-1 at 146-47.

On December 4, 2017, while the motion to suppress was still pending, Green appeared for a change in plea hearing. Doc. 14-1 at 206 (transcript of hearing). As explained during the change in plea hearing, the first plea offered by the State was for 42 months of incarceration. *Id.* at 208. The court, however, rejected that plea. *Id.* Thus, at the hearing the State offered to double that time and proposed an 84-month plea agreement. *Id.* After reviewing Green's prior criminal history, which included prior trafficking offenses, and previous incarcerations, as well as the facts in the instant case, the court stated that if Green wanted to plea, the court would not sentence him to more than ten (10) years, with a 3-year minimum. *Id.* at 214. After more discussions, Green entered an open plea, Doc. 14-1 at 206, and the court sentenced him to ten (10) years' incarceration.[2] *Id.* at 152, 233-34.

B.   **Postconviction History**

After missing the appeal deadline, on January 26, 2018,[3] Green filed a *pro se* petition for belated appeal with the First District Court of Appeals ("First DCA"), Doc. 14-1 at 174, which petition was granted. *See* Case No. 1D18-3589; Doc. 14-3. On October 17, 2019, the First DCA affirmed the circuit court's judgment and

---

[2] The State recommended an 84-month sentence and defense counsel argued for a sentence of less than 10 years. Doc. 14-1 at 229.
[3] Although the date Green claimed he gave the motion to prison mail officials is "December 25, 2018 (sic)", the prison mail stamp indicates it was received by the prison on January 26, 2018.

conviction without written opinion. Doc. 14-5 at 3. On February 26, 2020,[4] Green filed a postconviction motion under Florida Rule of Criminal Procedure 3.850 ("Rule 3.850 Motion"). Doc. 14-6 at 32. That motion was continuously pending until January 10, 2022, when the First DCA issued its mandate, affirming the circuit court's denial of the relief on the motion. *See* Case No.: 1D21-1920; Doc. 14-9 at 2. Green filed the instant federal petition on August 16, 2022. Doc. 1 at 16. Therefore, the petition is timely.[5]

## II. LEGAL STANDARDS

### A. The AEDPA

The AEDPA governs a state prisoner's petition for habeas corpus relief. 28 U.S.C. § 2254. Under the AEDPA, relief may only be granted on a claim adjudicated on the merits in state court if the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[4] The Secretary uses the date of April 14, 2020, because there is no prison mail stamp on the filing and no envelope was included in the record. The February 26, 2020, date is the date Green claims he gave the motion to prison mail officials.

[5] Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petition for habeas relief must be filed within one year of certain trigger dates – the pertinent one here being one year from final judgment. 28 U.S.C. § 2244(d)(1)(A). Properly filed post-conviction motions, such as a motion under Florida Rule of Criminal Procedure 3.850, will toll the limitations period until the motion is fully resolved. *Id.* at § 2244(d)(2).

28 U.S.C. § 2254(d). This standard is both mandatory and difficult to meet. *White v. Woodall*, 572 U.S. 415, 419 (2014). "Clearly established federal law" consists of the governing legal principles set forth in the decisions of the United States Supreme Court when the state court issued its decision. *Id.* A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court correctly identifies the governing legal principle, but applies it to the facts of Petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams v. Taylor*, 529 U.S. 362, 406 (2000)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

Green has raised three claims of ineffective assistance of trial counsel ("IATC"). An IATC claim requires a showing that (1) counsel's performance during representation fell below an objective standard of reasonableness, and (2) prejudice resulted, *i.e.*, that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential. *Id.* at 689. The defendant bears the burden of proving that counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. *Id.* at 688-89

*Strickland*'s prejudice prong requires a petitioner to allege more than simply that counsel's conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. The petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Bare allegations the petitioner was prejudiced by counsel's performance are not enough. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).

## III. DISCUSSION

As an initial matter, the Secretary does not dispute, and the undersigned

agrees, that Green has exhausted the three grounds of relief raised in the instant petition. Each ground was raised in the Amended Rule 3.850 motion, Doc. 14-6, and again on appeal, Doc. 14-7. Also, because the First DCA affirmed the circuit court's denial of relief on the post-conviction motion without a written opinion, this Court will "look through" the First DCA decision to the state court's 3.850 order denying relief for the state's rationale. *See Wilson v. Sellers,* 138 S. Ct. 1188, 1192 (2018). In considering that order, the undersigned finds Green is not entitled to habeas relief.

### A.    Ground One: IATC for failing to advance a dispositive motion to suppress

In Ground One, Green argues defense counsel Tischler was ineffective for failing to continue to argue the motion to suppress filed by original counsel. He claims that if the motion had been pursued it would have been successful and the case would have been dismissed or the evidence so limited that he would have been acquitted or convicted of a lesser offense. Doc. 1 at 6. The circuit court denied relief under *Strickland* because Green "knowingly and voluntarily abandoned the motion by entering his plea." Doc. 14-6 at 67. As discussed below, the record supports the circuit court's factual findings and there was no misapplication of those facts to the law.

As part of the plea, Green executed a "Petition to Enter Plea of Guilty/Nolo Contendere", Doc. 14-1 at 159. That Petition contains several important paragraphs

Case No. 1:22cv207-AW-HTC

that undermine Green's claim that Tischler was ineffective for failing to prosecute the motion to suppress. *Id.* at 162. First, Green signed the Petition "under penalty of perjury" and expressly "affirm[ed]" he read and understood the document. *Id.* Second, in Paragraph 2 of the Petition, Green represented he was "satisfied" with Tischler's representation and had "no concerns about the adequacy" of Tischler's investigation or preparation. *Id.* at 159. He further stated in that paragraph that he discussed the "allegations and charges" against him with Tischler, as well as the "evidence" and "motions that may be filed" on his behalf. *Id.* Green also represented counsel "sufficiently explained" any defenses and that he understood by pleading, he was giving up or waiving defenses. *Id.*

During the plea colloquy, Tischler asked Green if the two of them discussed the Petition, whether he read each paragraph of that document to Green, whether Green understood each paragraph of the document, and whether Tischler answered all of Green's questions about the document. Doc. 14-1 at 221-22. Green answered each of those questions affirmatively. *Id.* Tischler also inquired whether Green had any questions before the court took his plea and Green indicated he did not. *Id.* Tischler asked Green to initial each paragraph, which he did. Doc. 14-1 at 159.

Moreover, as the exchange below shows, counsel also specifically addressed the motion to suppress with Green in open court:

> MR. TISCHLER: Did we discuss the issue of a Motion to Suppress, both physical evidence, as well as statements?

>   THE DEFENDANT: Yes.
>   MR. TISCHLER: And you previously wrote some motions on your own; correct?[6]
>   THE DEFENDANT: Yes.
>   MR. TISCHLER: And did we have a chance to go over them and discuss their likelihood of success in jail last night?
>   THE DEFENDANT: Yeah.
>   MR. TISCHLER: Okay. Is anyone forcing you or threatening you to take this plea today?
>   THE DEFENDANT: NO.

*Id.* at 224.

Green's sworn declarations, under penalty of perjury, carry a strong presumption that the representations therein are true. *United States v. Medlock,* 12 F.3d 185, 187 (11th Cir. 1994) (citing *United States v. Gonzalez-Mercado,* 808 F.2d 796, 799-800 (11th Cir. 1987)); *see also United States v. Rogers,* 848 F.2d 166, 168 (11th Cir. 1988) (per curiam) ("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false.") (citing *United States v. Hauring,* 790 F.2d 1570, 1571 (11th Cir. 1986) (per curiam)). While Green now takes issue with Tischler's failure to prosecute the motion to suppress, Green was aware of the pending motion, discussed it with Tischler, and nonetheless chose to enter into a plea.[7] By doing so, Green waived any defenses he had,

---

[6] The trial court struck a slew of pro se unauthorized letters and motions to suppress filed by Green. Doc. 14-1 at 112-21.

[7] Counsel also told the court during the hearing, as part of the argument for a more lenient sentence, that Green was entering into a plea because he wanted to "close the case" and "is taking full responsibility for his actions." Doc. 14-1 at 230. Moreover, counsel stated that he sat down with Green and showed him the video and discovery, and even though Green has a good case and there are arguments to be made, Green "wants to move on with his life." *Id.*

including that any evidence should be suppressed. Counsel, therefore, was not deficient in failing to pursue the motion to suppress.

Also, Green cannot show that any such failure was prejudicial to him because there is nothing in the record to indicate the motion would have been granted. The basis of the motion was that the officer stopped Green's vehicle based on racial profiling. Doc. 14-1 at 96. The offense report, however, shows that the officer pulled the vehicle over for following too closely. Doc. 14-1 at 28; *see Whren v. U.S.,* 517U.S. 806, 810 (1996) ("A traffic stop is constitutional when law enforcement has probable cause to believe that a traffic violation has occurred."). As for the argument the stop was longer than necessary, the officer noted the passenger making furtive movements, thus giving him "reasonable and articulable suspicion illegal activity has occurred or is occurring." *United States v. Pruitt,* 174 F.3d 1215, 1220 (11th Cir.1999) ("even if the Court was inclined to find that the traffic stop was conducted in a dilatory manner to accomplish the dog sniff, the reasonable suspicion law enforcement possessed justified any *de minimis* prolongation of the stop"). Moreover, as discussed more below, even if the motion had been pursued, Green has failed to show it would have altered the plea he entered. Green is not entitled to relief on Ground One.

**B.     Ground Two: IATC for advising Green to enter an open plea before resolving the motion to suppress and after the trial court "improperly interjected itself into the proceedings"**

In Ground Two, Green contends that counsel was ineffective for failing to advise him after the court rejected the 40-month plea offer that he could proceed with a hearing on the motion to suppress and if he lost, he could still enter a plea later, reserving the right to appeal the denial of the motion, or go to trial. Green also claims "the trial court improperly interjected itself" into the plea negotiations and thus counsel should have moved to disqualify the judge. Doc. 1 at 8-9.

Applying *Strickland,* the circuit court denied relief on this claim because (1) the parties invited the court into the plea negotiation process; (2) there were no grounds to disqualify the judge; (3) the plea was not involuntary just because the alternatives were unpleasant; and (4) Green knowingly and voluntarily chose to forgo the suppression hearing, and had he rejected the open plea and proceeded to trial, he was looking at a potential of 30 years if convicted. Doc. 14-6 at 68-69. These conclusions were not contrary to, and did not involve an unreasonable application of the facts to, clearly established Federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d).

First, counsel was not deficient for failing to move to disqualify the judge, as any such motion would be meritless. Under Florida law, it is not error for a judge to participate in plea negotiations if the trial court did not initiate the plea dialogue and does not state or imply alternative sentencing possibilities which hinge upon defendant giving up future procedural choices, like exercising his right to go to trial.

*See, e.g., State v. Warner*, 762 So. 2d 507, 513-14 (Fla. 2000).

Here, as the circuit court correctly noted, the parties invited the judge into plea negotiations. At the outset of the plea colloquy, the prosecutor explained to the court, "I think both sides are inviting the Court, again, into plea negotiations." Doc. 14-1 at 207. The court commented that "at the time the original negotiation was put to the Court, the parties approached, invited the Court in." *Id.* at 208-09. The judge also explained to Green that the attorneys had invited him into the discussion, and he has "sort of given them an understanding of what – sort of the most [he] would do in your case." *Id.* at 218-19. Moreover, at no time during the hearing when the court was explaining its rationale for not accepting the proposed plea agreement and willingness to cap the penalty to 10 years did the court hinge such possibility of Green giving up any future procedural choices he had.

Because the judge did not commit any error during the plea hearing, counsel could not have ben deficient for failing to raise a meritless motion to disqualify him. *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (quotation omitted) (an attorney cannot be deemed ineffective for failing to raise claims that are "reasonably considered to be without merit"). Also, any claim that he was "coerced" by the judge to enter an open plea is belied by the record. No such coercion is evident from the transcript and when Green signed the Petition for Plea, he specifically acknowledged he was entering into the plea "freely, knowingly, intelligently, and

voluntarily" because it was in his best interest to do so. Doc. 14-1 at 160.

Likewise, Green's claim that counsel was ineffective for failing to advise him he could proceed with the motion to suppress before pleading is belied by the record. As discussed above, Green voluntarily and knowingly waived all defenses and chose to proceed with an open plea despite the pending motion to suppress. Indeed, Tischler specifically discussed the pending motion with Green on the record. Green could have chosen at that time to forgo entering an open plea and proceed with the motion. He, however, did not.

Green also fails to meet the prejudice prong under *Strickland*. His self-serving claim that he would have gone to trial falls flat. *See Cook v. United States*, 189 Fed. Appx. 927, 932 (11th Cir. 2006) (defendant's after-the-fact assertion, standing alone, was insufficient to establish that defendant would have accepted plea offer). As the circuit court noted, had Green gone to trial he would have been facing a potential 30-year penalty rather than the 10-year cap the court was willing to consider under a plea. *See Winthrop-Redin v. United States*, 767 F.3d 1210, 1219 (11th Cir. 2014) (to establish prejudice, the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial").

And to the extent Green contends he was prejudiced by counsel's alleged errors because he could have always entered a plea later, Green must show that such

a future plea was likely. That is, he would have to "show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)." *Lafler v. Cooper*, 566 U.S. 156, 163–64 (2012). Green has not made that showing here. Indeed, given the trial judge's rejection of two plea agreements, the judge's comment that the pending motion to suppress has no bearing on his willingness to cap the penalty to 10 years on an open plea, and the judge's scrutiny of Green's prior criminal history, including prior periods of incarceration and continued engagement in similar conduct, it is not probable that any plea offer presented after the motion to suppress was decided would be more favorable than the open plea.

No reasonable jurist would find that the circuit court's determinations that Green did not meet either the performance or prejudice prongs under *Strickland* were not "so obviously wrong" as to be "beyond any possibility for fair-minded disagreement. *See Shinn v. Koyer*, 592 U.S. 111, 118 (2020). Green is not entitled to relief on Ground Two.

    **C.**    **Ground Three: IATC by failing to investigate police dashcam video**

In Ground Three, Green claims he told counsel to investigate the video and audio evidence from the police dash and body cams, but counsel did not, telling him instead that "predecessor counsel had already investigated the video and audio

evidence and that they were accurate." Doc. 1 at 11. Green argues the video had been edited and that the K-9 dog had not alerted to the vehicle but to Green's person; however, no narcotics were found on him. Also, he claims the audio would demonstrate that he repeatedly refused consent to search the vehicle. *Id.*

The state court found the claim that counsel failed to investigate the video refuted by the record. This undersigned agrees. At the plea colloquy defense counsel told the court that "I went out to the jail and spent several hours with him, brought the video, actually went through it. He hadn't seen it, you know, in a very long time." Doc. 14-1 at 209. Also, Green admitted he and counsel had gone over the physical evidence in the case and had evaluated the likelihood of success of a motion to suppress. *Id.* at 224. Green was given many opportunities in the colloquy to dispute his counsel's representations, but Green never did so.

Additionally, the state court's determination that counsel's performance was neither deficient nor prejudicial is both legally and factually supported. Even if the video showed the dog alerted to Green's person, rather than the vehicle, that would not make a difference. In *Florida v. Harris*, 568 U.S. 237 (2013), the Supreme Court rejected the application of a rigid test for determining probable cause for a warrantless search of a vehicle based on a dog alert, and held, instead, that a court should apply a "common-sensical standard", which looks to the "totality of the circumstances". *Id.* at 1052. Utilizing that standard here, fair-minded jurists could

conclude that the dog was detecting drug residue on Green left from handling the drugs during the furtive movements he was seen making in the vehicle or from drugs inside the vehicle. *See, e.g.*, *United States v. Winters,* 600 F.3d 963, 967 (8th Cir. 2010) ("[A]n alert or indication by a properly trained and reliable drug dog provides probable cause for the arrest and search of a person or for the search of a vehicle."). Indeed, the fact that no drugs were found on Green makes it even more likely that the alert was for residue that came from the vehicle. *Harris*, 568 U.S. 237, 245–46 (noting that "if the dog alerts to a car in which the officer finds no narcotics, the dog may not have made a mistake at all. The dog may have detected substances that were too well hidden or present in quantities too small for the officer to locate. Or the dog may have smelled the residual odor of drugs previously in the vehicle or on the driver's person."). Green is not entitled to habeas relief on Ground Three.

## IV. CONCLUSION

### A. Evidentiary Hearing

The undersigned finds that an evidentiary hearing is not warranted. In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan,* 550 U.S. 465, 474 (2007). Upon consideration, the undersigned finds that the claims in this case can be resolved without an evidentiary hearing. *See id*.

Case No. 1:22cv207-AW-HTC

## B. Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Court provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "[B]efore entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

It is respectfully RECOMMENDED:

1. That the petition under 28 U.S.C. § 2254, challenging the conviction in *State v. Green*, Alachua County, Florida, Case Number 2016 CF 2598, Doc. 1, be DENIED without an evidentiary hearing.

2. That a certificate of appealability be DENIED.

3. That the clerk be directed to close the file.

At Pensacola, Florida, this 29th day of April, 2024.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed **within fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.